**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAVINDER SINGH, | No. 09-73469 |
| Petitioner, | Agency No. A098-505-456 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 3, 2014
Pasadena, California

Before: PREGERSON and BERZON, Circuit Judges, and AMON, Chief District
Judge.[**]

Ravinder Singh, a native and citizen of India, petitions for review of the

Board of Immigration Appeals' ("BIA") order dismissing his appeal from an

Immigration Judge's ("IJ") denial of his application for asylum, withholding of

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Carol Bagley Amon, Chief District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition and remand to the BIA for further proceedings on an open record.

The BIA focused on two intertwined issues in affirming the IJ's determination below: (1) despite his testimony about his active participation in the Shiromani Akali Dal Mann party, Singh testified that his village belonged to a parliamentary constituency that did not correspond to any of the listed constituencies on an Indian Election Commission's list of constituencies in Punjab provided by the DHS attorney; and (2) the candidate Singh identified as the winning candidate from his constituency in the 1999 parliamentary election was not listed on the Indian Election Commission's published candidate list for 1999 provided by the DHS attorney. The BIA also determined that the minor inconsistencies identified by the IJ, when viewed cumulatively, further served to weaken Singh's credibility.

Singh testified that his village was located in the Dakha[1] constituency, a constituency that was not on the list of 13 constituencies provided by the DHS

---

[1] Singh was never asked to spell any names during his hearing. The transcript spells "Dakha" as "Dakhan," "Rajinder Kaur Bulara" as "Rijander Kaur Bulara," "Shiromani Akali Dal Mann" as "Shirmi Khali Da Ma," and "Ludhiana" as both "Gutiana," and "Ludian."

attorney.  The DHS attorney represented to the IJ multiple times that the 13 listed

constituencies included "all the constituencies" in Punjab.  Relying in part on this

representation, the IJ and BIA found Singh's testimony not credible.

It is unclear from the list itself, however, what the list is, whether it is a

complete list of constituencies in Punjab, or whether there are other constituencies

not on the list.  In fact, as the record itself indicates, the list included only the 13

parliamentary constituencies in Punjab; it did not list the 117 assembly

constituencies in Punjab.[2]  Moreover, during oral argument before this court, the

government admitted that it made a mistake if Dakha was one of the 117 assembly

constituencies.  In light of the government's concession and the cryptic and

inadequate nature of the list itself—which does not state what it is or whether it is a

complete list of constituencies—we conclude that this perceived inconsistency is

not a cogent reason upon which an adverse credibility finding may be based.  *See*

---

[2] Although we do not rely on evidence outside the record in resolving this case, we do note that the same official Indian Election Commission website used by the DHS attorney confirms our conclusion that the DHS attorney's list is not a complete list of all the constituencies in Punjab.  That website lists the 117 assembly constituencies in Punjab, one of which is Dakha, the constituency Singh named as his constituency.  *See* Statistical Report on General Elections, 1999 to the Thirteenth Lok Sabha, Volume III, at 838-79 (listing all assembly constituencies within Punjab), *available at* http://eci.nic.in/eci_main/StatisticalReports/LS_1999/Vol_III_LS_99.pdf; *see also id.* at 862-65 (showing the Dakha assembly constituency within the Ludhiana parliamentary constituency).

3

*Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000) ("[A]dverse credibility findings must be based on specific, cogent reasons that bear a legitimate nexus to the finding.").

The other noted major inconsistency is bound up with the first. We are therefore unable to determine whether the BIA and IJ would have found Singh incredible based on the second major inconsistency alone.[3]

Moreover, the minor inconsistencies identified by the IJ cannot support an adverse credibility finding. The IJ noted that these minor inconsistencies "do not independently justify an adverse credibility determination," but "taken cumulatively" and "[i]n light of the major inconsistencies . . . , these additional

---

[3] Again, although we do not rely on this evidence in resolving this case, we note that the candidate Singh named—Rajinder Kaur Bulara—was a Member of Parliament from the Shiromani Akali Dal Mann party in 1989. *See* The Election Commission of India, Key Highlights of General Elections, 1989 of the Nineth Lok Sabah, at 79, *available at* http://eci.nic.in/eci_main/SR_KeyHighLights/LS_1989/Vol_I_LS_89.pdf.

She also ran in the 2002 Punjab state election from the Ludhiana West assembly constituency. *See* The Election Commission of India, Statistical Report on General Elections, 2002 to the Legislative Assembly of Punjab, at 145 *available at* http://eci.nic.in/eci_main/StatisticalReports/SE_2002/Stat_rep_2002_PB.pdf.

Moreover, Singh appears to have correctly identified the Shiromani Akali Dal Mann candidate from Dakha in the 2002 Punjab state election as Bikramjit Singh Khalsa. *See id.* at 144 (reporting candidate as Bikramjit Singh). He also correctly stated that the Indian National Congress candidate was the winner from the Dakha constituency in that election. *See id.* (reporting Indian National Congress candidate Malkiat Singh Dakha the winner of the Dakha constituency).

inconsistencies weaken [Singh's] credibility such that the claim is deprived of the 'requisite ring of truth.'" Yet all but one of the minor inconsistencies identified by the IJ are in fact not inconsistencies, and the one remaining does not call Singh's credibility into question:

1. There is no inconsistency between Singh's testimony on direct examination that he was in Ambala, Haryana in the days following a January 20, 2004 meeting, and his testimony on cross-examination that he initially went to Ludhiana when he left home on the night of January 20, 2004, and then traveled from place to place.

2. Both Singh and his father stated that Gurmeet Singh was killed in 2003. Naginder Singh, a family friend, provided a different date. This discrepancy in the record is not of sufficient import to call into question Singh's credibility.

3. Singh's failure to mention that his father became disabled as a result of being beaten by the police is not an inconsistency. Singh was not asked what happened to his father after his father was released from police custody; he was asked what happened to his parents during their arrest. He answered the question asked, stating that his father was beaten. Merely omitting a detail in his testimony that he was not

5

asked to provide cannot support an adverse credibility finding. *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000). Moreover, Singh stated in his asylum application that his father "became handicapped" because of the police torture he experienced in January 2004. This is consistent with his father's and Naginder Singh's affidavits.

4. There is no inconsistency as to the date Singh went into hiding. Singh stated that he and his brother went into hiding in January 2004. Singh stated in his asylum application that his brother went to Ganga Nagar in March 2004, while they were already in hiding, and that his family never heard from his brother after April 2004. This statement is consistent with Naginder Singh's affidavit that Singh and his brother went into hiding in January 2004 and Naginder Singh never saw them again. Finally, Singh's father did not say that his eldest son went into hiding in April 2004; he stated that his eldest son had been missing since April 2004, at which point he was already in hiding. This account is consistent with Singh's claim in his asylum application that his family had not heard from his eldest brother since April 2004.

5. Speculation and conjecture that it made "little sense" for the police to

threaten to arrest the protesters but then not follow through with the threat cannot form the basis of an adverse credibility finding. *See Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). This conclusion has particular force here because the police did follow through on their threat. The police arrested Singh and his brother at their home the following day when they were no longer in a public place and surrounded by spectators.

6. The IJ also listed as a minor inconsistency Singh's purported inability to explain why he hosted a political meeting in his home despite knowing the police were monitoring his activity. Singh provided an explanation. The IJ's speculation and conjecture about what someone in Singh's position—a person fighting for an independent Sikh state—would or would not do cannot form the basis of an adverse credibility finding. *See Zhou v. Gonzales*, 437 F.3d 860, 865 (9th Cir. 2006).

We note that the BIA did not make an alternative finding that, even if credible, Singh failed to establish past persecution.

Finally, substantial evidence does not support the BIA's determination that Singh lacked an objectively reasonable fear of future persecution if returned to

7

India.  The BIA concluded that conditions have improved in India for Sikhs in general and members of the Shiromani Akali Dal party in particular.  The BIA's conclusion is wrong.  The BIA confused the mainstream Shiromani Akali Dal party with Singh's Sikh separatist party, the Shiromani Akali Dal *Mann* party.  The Shiromani Akali Dal Mann party is not a mainstream party—it continues to advocate passionately for a separate Sikh state and is treated differently and often harshly by the authorities.  *See Singh v. Gonzales*, 238 Fed.Appx. 285, 286-87 (9th Cir. 2007) (unpublished).

Moreover, Singh is not an average Sikh.  Singh's testimony and the statements from Singh's father and Naginder Singh indicate that the police continue to harass his family.

The country conditions on which the BIA relied fail to show whether someone in Singh's position—a member of the Shiromani Akali Dal Mann party whose family is still being harassed by the police because of his political advocacy—no longer faces persecution in India.  *See Marcos v. Gonzales*, 410 F.3d 1112, 1120-21 (9th Cir. 2005) (requiring an individualized determination whether the changed county conditions will affect the applicant's specific situation).  The BIA's determination is not supported by substantial evidence.

For the foregoing reasons, we grant the petition for review and remand on an

8

open record for a renewed credibility finding.  We also remand for a new determination of changed country conditions, taking into account that Singh alleges that he is a member of the Shiromani Akali Dal Mann party, not the mainstream Shiromani Akali Dal party.

**GRANTED and REMANDED on an open record.**